UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AETNA LIFE INSURANCE COMPANY, *et al.*, <br><br>                                     Plaintiffs, <br><br>                    -v- <br><br> PHYLLIS FRANK AND EMILY ROSEN, <br><br>                                     Defendants. | 19-CV-6259 (JPO) <br> 19-CV-11001 (JPO) <br> 20-CV-9729 (JPO) <br><br> OPINION AND ORDER |

J. PAUL OETKEN, District Judge:

Following the death of Erich Frank, these three interpleader actions were filed to resolve

the competing claims of Phyllis Frank and Emily Rosen over the proceeds of Erich Frank's life

insurance policy, his 401k plan, and his Resource Management Account ("RMA").  Frank[1]

moves for summary judgment on her claims that she is solely entitled to the proceeds of the life

insurance policy and the 401k plan (collectively, the "Plans").  Rosen cross-moves for summary

judgment seeking identical relief, and additionally moves for summary judgment with respect to

the proceeds of the RMA.  For the reasons that follow, Frank's motion is granted and Rosen's

motion is granted in part and denied in part.

## I.      Background

The following facts are undisputed.

Erich Frank was employed as the Head of Global Services at Union Bank of Switzerland

("UBS").  (*See* Dkt. No. 74 ¶ 1.)[2]  UBS provided Erich Frank with a life insurance policy, with a

---

[1] The Court will use "Frank" to refer to Phyllis Frank and Erich Frank's full name when referring
to him.

[2] Citations are to the docket of the lead case, *Aetna Life Insurance Company v. Rosen et al.*, No.
19 Civ. 6259.

face value of $150,000.00, and a 401k plan, with a value of $137,717.68 as of May 7, 2020.  (*See*

Dkt. No. 74 ¶ 2.)  Erich Frank also maintained an RMA with UBS, a personal investment

account that, as of November 18, 2020, had a value of approximately $361,071.00.  (*See* Dkt.

No. 74 ¶ 56.)  Frank is Erich Frank's mother.  Emily Rosen started dating Erich Frank in 2013

and they moved in together about a year later.  (*See* Dkt. No. 74 ¶ 6.)

     In August 2017, Erich Frank was diagnosed with Stage 4 colon cancer.  (*See* Dkt. No. 74

¶ 9.)  A little over a year later, in December 2018, Erich Frank was admitted into hospice care.

(*See* Dkt. No. 74 ¶ 12.)  Christopher Ferrara, a friend and co-worker of Erich Frank, arranged for

Erich Frank to hire a lawyer, Barbara Lawrence.  (*See* Dkt. No. 74 ¶¶ 14, 17.)  Lawrence visited

Erich Frank at his apartment on December 20, 2018, and Erich Frank signed a number of

documents, including a Power of Attorney appointing Lawrence.  (*See* Dkt. No. 74 ¶ 19.)  On the

same day, Ferrara visited Erich Frank's apartment and participated on a recorded phone call with

the following individuals: Erich Frank; the Head of Benefits at UBS; and a representative from

Alight Solutions, an online platform where UBS employees could make decisions about their

benefits.  (*See* Dkt. No. 74 ¶¶ 20, 62.)  During this call, Erich Frank indicated that he wanted to

change the beneficiary designations on his life insurance and 401k from Frank to Rosen.  (*See*

Dkt. No. 74 ¶ 63.)

     Erich Frank's life insurance policy, however, stated that participants could change their

beneficiary "by completing a new beneficiary designation form."  (*See* Dkt. No. 74 ¶ 40.)  His

401k plan similarly stated that participants could change their beneficiaries "by filing a new

beneficiary designation form."  (*See* Dkt. No. 74 ¶ 43.)  After Erich Frank's phone call with the

Head of Benefits at UBS and others, UBS mailed him a form dated the same day as the phone

call that stated:  "For your beneficiary designation(s) to be valid, this form must be completed

and returned to Benefits Express by January 20, 2019." (*See* Dkt. No. 74 ¶ 34.)  UBS never

received this completed form from Erich Frank or Lawrence. (*See* Dkt. No. 74 ¶ 36.)  The Head

of Benefits at UBS also emailed Ferrara a certification, which attested that Erich Frank was

unmarried, for Lawrence to sign. (*See* Dkt. No. 74 ¶¶ 25, 30.)  The Head of Benefits at UBS said

during the phone call that he needed this certification. (*See* Dkt. No. 55-7 at 10.)  Ferrara

forwarded the email to Lawrence (*see* Dkt. No. 74 ¶ 31), but there is no evidence that Erich

Frank or Lawrence ever responded to this email or signed the certification.

UBS records also indicate that Erich Frank spoke to Frank Sabia, Erich Frank's financial

advisor and a UBS employee, about his RMA on December 20, 2018. (*See* Dkt. No. 59-15; Dkt.

No. 74 ¶ 70.)  Following this conversation, Sabia's assistant sent a death beneficiary designation

form for the RMA to Rosen. (*See* Dkt. No. 74 ¶ 71.)  Rosen faxed the form back with what

purports to be Erich Frank's signature. (*See* Dkt. No. 74 ¶ 72.)  The form lists Rosen as the

beneficiary of Erich Frank's RMA proceeds. (*See* Dkt. No. 59-14.)

Erich Frank passed away on January 6, 2019. (*See* Dkt. No. 74 ¶ 50.)  Frank and Rosen

now each claim that they are the sole beneficiaries of the proceeds from Erich Frank's life

insurance, 401k, and RMA.  Aetna, the provider of Erich Frank's life insurance policy, filed an

interpleader action against Frank and Rosen for the life insurance proceeds on July 5, 2019 (Dkt.

No. 1); the Head of Benefits at UBS, who is also the administrator of the 401k plan, did the same

for the 401k proceeds on November 27, 2019, *O'Connor v. Frank et al.*, No. 19 Civ. 11001,

Docket Number 1; and UBS Financial Services Inc. did the same for the RMA proceeds on

November 18, 2020, *UBS Financial Services Inc. v. Frank et al.*, No. 20 Civ. 9729, Docket

Number 1.  Frank has moved for summary judgment as to the life insurance and 401k proceeds

(Dkt. No. 54), and Rosen has cross-moved for summary judgment as to these proceeds and the RMA proceeds (Dkt. No. 59-35).

## II.    Legal Standard

A party is entitled to summary judgment if it can "show[ ] that there is no genuine dispute as to any material fact and [it] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and a fact is "material" if "it might affect the outcome of the suit under the governing law." *Hurley v. Tozzer, Ltd.*, No. 15 Civ. 2785, 2018 WL 1087946, at *1 (S.D.N.Y. Feb. 26, 2018) (quoting *Gayle v. Gonyea*, 313 F.3d 677, 682 (2d Cir. 2002)). The party moving for summary judgment bears the burden of showing that no genuine dispute of material fact exists, *id.*, and in assessing whether the movant has carried this burden, a court "must view the evidence in the light most favorable to the party against whom summary judgment is sought and must draw all reasonable inferences in his or her favor," *Access 4 All, Inc. v. Trump Int'l Hotel & Tower Condo.*, 458 F. Supp. 2d 160, 166 (S.D.N.Y. 2006).

## III.    Discussion

Frank and Rosen dispute whether Erich Frank had the necessary mental capacity to make Rosen the beneficiary of the proceeds from his life insurance, 401k, and RMA. The parties also dispute whether Erich Frank designated Rosen as a beneficiary to these proceeds because she subjected him to undue influence. In the event that Erich Frank had the necessary mental capacity and was not subjected to undue influence to make Rosen the beneficiary, the parties disagree over whether Erich Frank substantially complied with the Plans' requirements for changing a beneficiary. Frank also maintains that Rosen forged Erich's signature on the form that listed her as the beneficiary for the RMA proceeds. And Rosen argues that Frank does not have standing in the RMA action specifically.

4

The Court first considers whether Frank has standing in the RMA action.  Because the Court holds that Frank does not have standing, it grants summary judgment in Rosen's favor with respect to the RMA proceeds.  The Court next considers whether Erich Frank substantially complied with the Plans' requirements for changing a beneficiary, ultimately concluding that he did not.  This conclusion makes it unnecessary for the Court to separately consider whether Erich Frank had the mental capacity to change his beneficiary or whether Erich Frank was subjected to undue influence.

### A.     Resource Management Account

Rosen asserts that Frank lacks standing to bring claims over the RMA proceeds because she did not suffer an injury in fact.  To have standing, a plaintiff must allege (1) an injury-in-fact, *i.e.*, "an invasion of a legally protected interest" that is concrete and particularized and not conjectural or hypothetical; (2) a causal connection between the injury and the defendant's alleged wrongful conduct; and (3) a likelihood that the requested relief will redress the injury. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992).

Unlike the life insurance and 401k accounts, where Erich Frank previously designated Frank as the beneficiary before switching it to Rosen, the RMA did not have a previously designated beneficiary before Erich Frank purportedly signed a form designating Rosen.  Frank prevailing on a claim for the RMA would thus lead to its proceeds going to Erich Frank's estate — instead of Frank — because Frank was never a designated beneficiary of the RMA.  Though Frank may have an interest in Erich Frank's estate as a beneficiary in his will or through intestacy, "in New York, heirs suing for damages resulting from a diminished inheritance generally have no standing to sue because 'legatees and beneficiaries thereof have no independent cause of action either in their own right or in the right of the estate to recover estate property.'"  *Witzenburg v. Jurgens*, No. 05 Civ. 4827, 2007 WL 9710763, at *9 (E.D.N.Y. Mar.

5

1, 2007) (quoting *Wierdsma v. Markwood Corp.*, 384 N.Y.S.2d 836, 837 (1st Dep't 1976)).  In response, Frank does not contest that any claims she would bring for the RMA would be brought on behalf of the estate.  Frank instead argues that this is a "circumstance[] where it is necessary to grant a third party standing to assert the rights of another."  (Dkt. No. 68 at 17 (quoting *Kowalski v. Tesmer*, 543 U.S. 125, 130 (2004)).

"Under New York law, absent extraordinary circumstances, actions brought on behalf of an estate must be brought by an executor or administrator."  *Bartone v. Podbela*, No. 17 Civ. 3039, 2018 WL 1033250, at *7 (E.D.N.Y. Feb. 23, 2018) (citing *Thea v. Kleinhandler*, No. 13 Civ. 4895, 2014 WL 2111637, at *5 (S.D.N.Y. May 13, 2014)).  "[E]xtraordinary circumstances may be implicated where the executor is allegedly directly involved in purported egregious conduct and self-dealing that negatively impacts the potential assets of the estate."  *Id.* (quoting *Lewis v. DiMaggio*, 981 N.Y.S.2d 844, 845 (N.Y. App. Div. 3d Dep't 2014)).

There are no extraordinary circumstances here that give Frank standing to bring any claims for the RMA.  Frank alleges that Rosen engaged in egregious conduct to remove the RMA from Erich Frank's estate — namely, exercising undue influence on Erich Frank and forging his signature on the form that designated her as the RMA beneficiary.  Frank further alleges that Erich Frank lacked the mental capacity to effectuate beneficiary changes.  But the executor of Erich Frank's estate is Sabia, not Rosen. (*See* Dkt. No. 74 ¶ 48, 92.)  Frank does not allege that Sabia exercised any undue influence on Erich Frank or assisted Rosen in forging Erich Frank's signature, or that Sabia did anything to undermine Erich Frank's mental capacity.  Yet Frank contends that Sabia was still directly involved in egregious conduct here because he colluded with Rosen.  There is no evidence in the record, however, to support this contention.  Frank baselessly asserts that UBS records falsely state that Sabia and Erich Frank spoke about

changing Erich Frank's RMA beneficiary, speculating that "it was actually Rosen who spoke

with either [Sabia] or more likely [Sabia's personal assistant]" about making her the RMA

beneficiary.  (Dkt. No. 68 at 20.)  To further support the existence of this alleged collusion,

Frank points to text messages between Sabia and Rosen in which they briefly discussed some of

Erich Frank's assets and Rosen mentioned that some of Erich Frank's sisters were harassing her.

(*See* Dkt. No. 69-8.)  But Sabia — Erich Frank's financial advisor — discussing Erich Frank's

assets with Erich Frank's longtime partner, or even Rosen talking to Sabia about how some of

Erich Frank's family members treated her, is a far cry from the two of them colluding to

unlawfully deprive Rosen's estate of the RMA.

Because Frank's claim of collusion between Sabia and Rosen is "unsupported by any

allegations of fact [or evidence] on which a finding of collusion may be based," the Court

concludes that Frank does not have standing to bring any claims over the RMA proceeds.  *See*

*Witzenburg*, 2007 WL 9710763, at *9.

### B.    Life Insurance and 401k Accounts

"State laws governing the designation of plan beneficiaries . . . relate to employee

benefits plans and thus are subject to ERISA preemption."  *Metro. Life Ins. Co. v. Bigelow*, 283

F.3d 436, 440 (2d Cir. 2002) (internal quotation marks omitted).  Under ERISA, employee

benefit plans "must be interpreted according to ordinary principles of contract law."  *Latronica v.*

*Loc. 1430 Int'l Bhd. of Elec. Workers Pension Fund*, No. 17 Civ. 550, 2019 WL 3997989, at *11

(S.D.N.Y. Aug. 23, 2019) (quoting *CNH Indus. N.V. v. Reese*, 138 S. Ct. 761, 763 (2018)).  In

applying these principles, the Court must interpret any unambiguous language in an ERISA plan

according to its plain meaning.  *See Aramony v. United Way of Am.*, 254 F.3d 403, 412 (2d Cir.

2001).  "Language is ambiguous when it is capable of more than one meaning when viewed

objectively by a reasonably intelligent person who has examined the context of the entire

integrated agreement." *Id.* (internal quotation marks omitted).  The Court may not refer to material external to the ERISA plan when making determinations of ambiguity.  *See id.*  Because Aetna filed an interpleader action, instead of exercising its discretion to pay benefits to either Frank or Rosen, the Court reviews *de novo* what the Plans' requirements were for changing a beneficiary.  *See, e.g.*, *Becker v. Williams*, 777 F.3d 1035, 1041 (9th Cir. 2015); *Liberty Life Assurance Co. of Boston v. Kennedy*, 358 F.3d 1295, 1299 (11th Cir. 2004).

Once the Court determines what the Plans' requirements were, it must consider whether Erich Frank substantially complied with them.  "When ERISA preempts a state law but is itself silent on the relevant issue, federal courts create a federal common law of rights and obligations under ERISA regulated plans."  *Conn. Gen. Life Ins. Co. v. Mitchell*, No. 94 Civ. 04648, 1995 WL 469714, at *7 (S.D.N.Y. Aug. 8, 1995) (citations omitted); *see also Am. Int'l Life Assurance Co. of New York v. Vazquez*, No. 02 Civ. 141, 2003 WL 548738, at *5–6. (S.D.N.Y. Feb. 25, 2003).  "In particular, 'where the insured wanted to change the named beneficiary but failed to strictly comply with the ERISA plan, courts have adopted from common law the doctrine of substantial compliance to give effect to the insured's intent.'"  *Stets v. Securian Life Ins. Co.*, No. 17 Civ. 09366, 2020 WL 1467395, at *5 (S.D.N.Y. Mar. 25, 2020) (quoting *Am. Int'l Life Assurance*, 2003 WL 548738, at *5–6 (citations omitted)).  Courts in this district consider whether the insured "(1) evidence[d] his or her intent to make the change and (2) attempt[ed] to effectuate the change by undertaking positive action which is for all practical purposes similar to the action required by the change of beneficiary provisions of the policy."  *Id.* (quoting *Am. Int'l Life Assurance*, 2003 WL 548738, at *5).

The Plans here both unambiguously set out how to add or change a beneficiary: by completing a beneficiary designation form.  The life insurance policy states that "[y]ou may

change your beneficiary choice at any time *by completing a new beneficiary designation form.*"

(Dkt. No. 74¶ 40 (emphasis added).)  The 401k policy states that "a Participant may from time to

time revoke or change his Beneficiary designation without the consent of any prior Beneficiary

*by filing a new beneficiary designation form* with the Plan Administrator."  (Dkt. No. 74 ¶ 43

(emphasis added).)  Despite this clear language, Rosen asserts that there is an ambiguity here.

For this argument, Rosen does not contest the plain meaning of the quoted excerpts from the

Plans, nor does she argue that the Plans' description of how to change a beneficiary — when

read in conjunction with other provisions of the Plans — is ambiguous.  Rosen instead relies on

materials external to the Plans to argue for the existence of an ambiguity.  Specifically, Rosen

points to a 2019 UBS Benefits Confirmation Statement and a 2005 UBS 401k Account

Statement (collectively, "Statements"), both of which inform employees that they can visit a

"Your Benefit Resources" website to update beneficiary designations.  (*See* Dkt. No. 74¶¶ 58–

59.)  Because the Statements do not reference completing a beneficiary designation form, Rosen

contends that it is ambiguous whether participants of the Plans needed to complete a beneficiary

designation form to change their beneficiaries.

       Rosen's argument is flawed, however, because the Statements are distinct documents

from the Plans.  The mere fact that UBS issued these Statements, on its own, does not mean that

these Statements constitute the terms of the Plan.  *Cf. Cigna Corp. v. Amara*, 563 U.S. 421

(2011) (explaining that the summary plan description documents that companies distribute to

employees "do not themselves constitute the *terms*" of ERISA-governed plans).  Rosen also does

not provide any evidence that the Statements — or any other documents — amended the Plans'

beneficiary designation form requirement in accordance with the Plans' amendment procedures.

*See Ehrlich v. Nynex Corp.*, 949 F. Supp. 213, 219 (S.D.N.Y. 1996) ("[A]s there is no evidence

that the procedures established for amendment of the Plan were complied with in this instance . . . the Court cannot conclude that any such amendment was valid."); *see also Coleman v. Nationwide Life Ins. Co.*, 969 F.2d 54, 58–59  (4th Cir. 1992) (holding that "any modification to a plan must be implemented in conformity with the formal amendment procedures and must be in writing").  Indeed, after Erich Frank expressed his desire to change his beneficiary over the phone with the Head of Benefits at UBS, UBS mailed him a form that stated the following:  "For your beneficiary designation(s) to be valid, this form must be completed and returned to Benefits Express by January 20, 2019."  (Dkt. No. 74 ¶ 34.)  The Court thus concludes that the Plans required Erich Frank to complete a beneficiary designation form, and now turns to whether Erich Frank substantially complied with this requirement.

*Stets v. Securian Life Insurance Company*, a recently decided case in which a judge in this district held that a beneficiary change was valid under substantial compliance, is instructive here.  In *Stets*, a participant of an ERISA-governed plan appointed his sister power of attorney, and the sister's lawyer orally communicated to her brother's employer that the sister wanted to change her brother's beneficiary.  *Stets*, 2020 WL 1467395, at *6.  Following this conversation, the employer sent an email to the lawyer to confirm the change, and the lawyer replied approving the change.  *Id.* at *2.  The court concluded that the plan required participants to change their beneficiaries by logging onto a website and making a written request.  *Id.* at *6.  The lawyer's email substantially met this requirement, however, because it was in writing.  *Id.*  Here, too, the Plans require a writing — the beneficiary designation form.  And there was also a phone conversation here, in which Erich Frank expressed a desire to change his beneficiary.  Following this phone call, UBS emailed a form to Ferrara for Erich Frank's lawyer to sign on behalf of Erich Frank, which Ferrara forwarded to Erich Frank's lawyer.  (*See* Dkt. No. 74 ¶¶ 30–31.)

UBS later mailed a different form to Erich Frank for him to complete to make his new beneficiary designation valid. (*See* Dkt. No. 74 ¶ 34.) But UBS never received either form from Erich Frank or his lawyer. (*See* Dkt. No. 59-1 at 3; Dkt. No. 74 ¶ 36.) And there is no evidence that Erich Frank or his lawyer ever completed these forms or responded in any way to UBS's email or mailing. Rosen notably does not assert that Erich Frank, or his lawyer, ever completed either of these forms — or submitted any other writing — to confirm Rosen as his new beneficiary. The Court thus concludes that the second prong of substantial compliance — whether the insured undertook positive action which was for all practical purposes similar to the action the Plans required — is not met here. In light of this conclusion, the Court need not separately address the first prong of substantial compliance.

Accordingly, the Court grants summary judgment for Frank, and denies summary judgment for Rosen, on the proceeds of the life insurance and 401k accounts as a matter of law.

## IV.    Conclusion

For the foregoing reasons, Frank's motion for summary judgment is GRANTED and Rosen's cross-motion for summary judgment is GRANTED in part and DENIED in part.

The Court hereby orders and declares that Phyllis Frank is entitled to the Aetna life insurance death benefit and the UBS-administered 401k plan at issue in these cases. The Court further orders and declares that Emily Rosen is entitled to the UBS Resource Management Account (RMA) at issue.

The Court directs the Clerk of Court to disburse the entire life insurance death benefit and 401k plan proceeds on deposit with the Court to Phyllis Frank.

The Court directs UBS Financial Services Inc. to disburse the proceeds of Erich Frank's RMA to Emily Rosen.

11

The Clerk of Court is directed to close the motions at Docket Number 54 (in 19-CV-6259) and Docket Number 40 (in 19-CV-11001) and to close all three of these cases.

SO ORDERED.

Dated: March 22, 2022
New York, New York

_____
J. PAUL OETKEN
United States District Judge